OUTCAULT ADVERTISING COMPANY v. A. A. FAIN AND W. E. HOWELL, PARTNERS, ETC.

(Filed 31 May, 1916.)

**1. Vendor and Purchaser—Pleadings—Proof—Variance—False Representations—Opinion.**

Where it is alleged in an action to recover a sum claimed to be due under plaintiff's contract to furnish cuts to be used by the latter for advertising purposes in a local newspaper, that the agent of the plaintiff induced the defendant to enter therein upon falsely representing that the management of the paper had agreed to use the cuts at the same rate defendant had theretofore been paying, and the proof was that the plaintiff's agent had stated to defendant that it would not cost more, and upon due deliberation the defendant had accepted the offer: *Held,* there was a fatal variance between the allegation and proof, the latter amounting to no more than an expression by the agent of his opinion.

**2. Same—Trials—Evidence.**

Where a business concern has agreed to use, under contract, at a stated price, cuts furnished for advertising purposes, and there is evidence in defense tending to show that the vendor's agent, in making the sale, stated that the manager of a local paper said he would use them at the same advertising rates the defendant had been paying, which he had refused to do, this, of itself, is no evidence of the falsity of the representations.

CIVIL ACTION tried before *Ferguson, J.,* and a jury, at January Term, 1916, of CHEROKEE.

This is an action to recover $104 alleged to be due under a contract by the plaintiff to furnish the defendants certain metal cuts to be used in the local paper where the defendants did business, in advertising the business of the defendants.

The defendants admitted the execution of the contract and did not deny that the amount claimed by the plaintiff was due, if anything was due, but they alleged that the contract was procured by a false representation, and that therefore they did not owe the plaintiff anything.

The representation alleged to be false is that "it (the plaintiff) had arranged with the editor of the *Cherokee Scout* to print the advertising matter as set out in said order for the same price that defendants were then paying for an ad. in said paper," and all the evidence offered in

proof of the representation and its falsity is the evidence of the defendant Howell, who testified as follows:

"I am one of the defendants in this action. The plaintiff's salesman called on me while we were in business and said he was selling good advertising matter. He came in and had a talk with me and he took out his samples and showed them to me and pulled out a copy of the *Cherokee Scout* from his pocket, showed it to me and said he had been up to the office and had talked to the editor, and that my advertising would not cost me any more than it was; and I told him I would have to study on it. He came back and I told him I believed I would take it under these terms, and I signed the contract. After this, I saw the editor of the *Scout* in regard to printing this advertisement, and the *Scout* would not print it at the same price; told me it would cost just twice as much as it was costing me. I then turned to the young man working for me and had him countermand the order. I dictated the letter dated 29 November. I think it was the same date, or the next day after the salesman was there. The editor came down to our place every night. The first time he was there I asked him about it. I had McIver to write it."

Defendant then introduced the letter of 8 December, 1913. It was admitted only as evidence of countermanding the order.

The witness, continuing, says: "There was a little bundle of these cuts, or whatever they were, that came there. I suppose it was the cuts. I saw from the box they shipped it in that it was, and I refused to take it. It is in the Southern depot now, I guess; but I don't know that it is. I never took it out, and notified them that we would not. I did not know the cuts were there until they were brought up and put on our prescription case; they may be there yet; I don't know. I wrote them and told them I would hold them until they sent me enough money to pay express charges, which they never sent."

The defendants countermanded the order and refused to receive the cuts.

At the conclusion of the evidence the plaintiff requested the court to instruct the jury to answer the issue "Yes; $104, with interest." The court declined to give this instruction, and the plaintiff excepted.

The jury returned the following verdict:

Are the defendants A. A. Fain and W. E. Howell indebted to the Outcault Advertising Company? If so, in what amount? Answer: "Nothing."

Judgment was rendered in favor of the defendants, and the plaintiff appealed.

*M. W. Bell for plaintiff.*
*Dillard & Hill, J. D. Mallonee, and O. L. Anderson for defendants.*

ALLEN, J. The allegation of the representation made by the agent of the plaintiff is that he told the defendants that the plaintiff had arranged with the editor of the *Cherokee Scout* to print the advertising matter at the same price the defendants were then paying for advertisement in the paper, while the proof is that the agent told the defendant that their advertising would not cost any more than it was then costing.

The variance between the allegation and the proof is clear, and its materiality is easily perceived when it is remembered· that neither the plaintiff nor its agent had anything to do with the contract for advertising.

The plaintiff was to furnish the cuts and the defendants were to make their own contracts for advertising, and when so considered the representation testified to amounted to no more than an expression of opinion as to the cost of advertising, which the defendants could easily verify by seeing the editor, who lived in the same town and who was at the place of business of the defendant daily.

It will be noticed there was no effort upon the part of the agent to prevent the defendants from making an investigation, and that instead of urging them to sign the contract when he first saw them, it was upon a second visit that the contract was entered into.

But suppose the representation means more and is equivalent to a statement that the editor said that the cost of advertising would not be greater than the amount the defendants were then paying; is there any evidence that this statement was false?

The editor of the paper is dead, and the defendants had to rely upon his declaration.

This was incompetent, because hearsay evidence; but as it was not objected to, we do not put our decision upon that ground.

The defendant Howell does not testify that he told the editor that the agent of the plaintiff made any statement to him, nor does he say that the editor told him that he had not told the agent that the cost of advertising would not be greater than the amount he was then paying, and considered in the most favorable light it amounts to no more than a bare suggestion that the statement which the defendants alleged was made as an inducement to the contract was false.

It is entirely consistent to say that the editor of the *Scout* told the agent that the defendants could get the advertising at the price he was then paying, and that when the defendants approached him to make the contract he had either changed his mind or for some other reason demanded a higher price.

If he had made a contract with the agent as to the cost of advertising and the agent had so stated, the evidence might have a different bearing, but it was not in the contemplation of any of the parties that the con-

tract for advertising should be made between the plaintiff or its agent
and the editor, and, on the contrary, all understood that this contract
was to be between the defendants and the editor.

We are therefore of opinion upon the record as it now stands that
there was error in refusing to give the prayer for instruction requested
by the plaintiff, and a new trial is therefore ordered.

New trial.